Terry Len ANDERSON, Milton
Wingate, and Dye Trucking
Co., Appellants,

v.

Johnny TRENT, Individually and As
Next Friend of Johnny Wayne
Trent, Jr., A Minor, Appellee.

No. 05–83–01489–CV.

Court of Appeals of Texas,
Dallas.

Dec. 12, 1984.

Rehearing Denied Jan. 14, 1985.

Lancaster Smith, Dallas, for appellants.

Frederick H. Shiver, Dallas, for appellee.

Before CARVER, GUILLOT and SHUM-
PERT, JJ.

GUILLOT, Justice.

This is an appeal from a judgment grant-
ing actual and exemplary damages as a
result of a jury verdict in a collision case.
In their first three points of error, appel-
lants, who will be collectively referred to as
Anderson, contend that there is no or insuf-
ficient evidence to support the findings of
gross negligence on the part of Dye or the
findings of recklessness or incompetence
on the part of Anderson. In his final point,
Anderson contends that, should exemplary
damages be awarded, they should be re-
duced by the 35 percent comparative negli-
gence of Johnny Trent's wife who was
killed in the accident. Other points of er-
ror are disposed of in an unpublished opin-
ion of this date. For the reasons below, we
affirm the damages portion of the judg-
ment.

We shall point out the facts as briefly as
possible. The accident giving rise to this
case occurred about 5:15 p.m., July 20,
1981, at the intersection of U.S. Highway
380 and the service road of U.S. Highway
75 in the City of McKinney, Texas. U.S.
380 is three lanes westbound and three
lanes eastbound at that point. These lanes
are divided by a concrete median. There

are stop signs stopping north and south traffic on the service road of U.S. 75.

Defendant Terry Len Anderson was driving a loaded tractor-trailer weighing approximately 78,000 pounds in the eastbound center lane of U.S. 380 when he collided with the automobile being driven by Tambra Arlene Trent. Mrs. Trent had driven up to the intersection in the inside westbound lane on U.S. 380 and was turning to the left to make a "U" turn and to go eastbound on U.S. 380. There was a flashing yellow light for the eastbound traffic at the intersection. That light was flashing red for north and south traffic on U.S. 75. Mrs. Trent died as a result of the injuries she sustained in this collision.

■ The evidence on whether Anderson was a reckless or incompetent driver and whether Dye knew or should have known this is, needless to say, conflicting. With respect to the no evidence contentions of Anderson, we focus only on the evidence favorable to the jury verdict, ignoring all contrary evidence. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). In so doing we find that there is evidence to support the jury's findings.

With respect to the insufficiency of evidence contention, we consider all the evidence to see if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 244 S.W.2d 660 (Tex.1951). The following evidence is favorable to Anderson: he had no chargeable accidents on his record for the previous three years; he had a chauffeur's and a commercial license; he had not had any suspension of his licenses in the past three years. On the other hand, the record also reveals that Anderson had three speeding violations—ranging from fifteen to twenty miles an hour above the limit—within a nine-month period that began only 25 months before the accident in question. He had previously had one accident, and he received a speeding ticket on the morning of the accident in question. The evidence further shows that, at the time of the accident, Anderson was driving a gravel truck weighing approximately 78,-000 pounds; that he was going approximately 35 miles per hour as he approached a known busy intersection controlled by a flashing yellow light; that his vision of the intersection was at least partially obstructed; and that it was financially advantageous for Anderson to haul as many loads of gravel that day as he could. While a different jury might have reached a different conclusion, this court is not authorized to substitute its judgment for this jury's. *Continental Bus System, Inc. v. Biggers,* 322 S.W.2d 1, (Tex.Civ.App.—Houston 1959, writ ref'd n.r.e.). We find that the evidence is sufficient to show that Anderson was a reckless or incompetent driver.

■ In determining the issue of Dye Trucking's gross negligence in permitting Anderson to drive for it, the jury heard evidence that Dye:

(1) hired Anderson at his first interview, a visit lasting fifteen to twenty minutes;

(2) did not talk to anyone for whom Anderson previously worked;

(3) did not administer a written or other driving test to Anderson;

(4) did not wait for a report from Austin on Anderson's driving record;

(5) did not give a defensive driving test or a copy of the safety manual to Anderson; and

(6) would not have hired Anderson if it had known the number of his traffic violations in the period of time.

There is also evidence of Dye's due care; nevertheless, weighing both the favorable and the unfavorable evidence, the jury could find evidence of Dye's gross negligence. In reviewing that finding, we must weigh all of the evidence. *See Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). In doing so, we hold that the evidence is sufficient. We overrule Anderson's first three points of error.

In his final point of error, Anderson contends that if we sustain the jury's award of exemplary damages against Dye, we must reduce the award by the amount of comparative negligence (35%) of Mrs. Trent. He

cites for this proposition *Pedernales Electric Cooperative, Inc. v. Schultz*, 583 S.W.2d 882 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.). In that case, the Court of Civil Appeals rightly stated that "the overriding policy consideration in the award of exemplary damages is as a punishment for gross negligence as distinguished from compensation." *Pedernales*, 583 S.W.2d at 884–85. But we disagree, for two reasons, with the Waco court's conclusion that the comparative negligence statute, TEX.REV. CIV.STAT.ANN. art. 2212a (Vernon 1984), also bars recovery of exemplary damages in "the proportionate part attributable to plaintiffs' contributory negligence." *Pedernales*, 583 S.W.2d at 885.

First, if exemplary damages were *only* for compensating the plaintiff, then an argument could be made that they should be reduced by the percentage of the plaintiff's comparative negligence. However, the paramount purpose for awarding exemplary damages is *not* to compensate the plaintiff, but to punish and set an example for others. *Missouri Pacific Railway Company v. Shuford*, 72 Tex. 165, 10 S.W. 408 (1888); *see also Pedernales*, 583 S.W.2d at 884–85. Consequently, it is incorrect to view the award of exemplary damages from the eyes of the recovering plaintiff; rather, the award should be viewed from the eyes of public policy. Second, if gross negligence, wanton conduct, or reckless disregard for the rights of others were a plain vanilla form of negligence, then comparative negligence would necessitate reduction in any damages. In Texas, however, while gross negligence has been defined in a myriad of ways, the distilled essence of those definitions is that ordinary negligence is not of the same ilk as gross negligence. Therefore, the two are not so analogous as to allow comparison for the purpose of reducing compensation.

Probably the best Texas case discussing the fact that ordinary and gross negligence are not comparable is *Burk Royalty Company v. Walls*, 616 S.W.2d 911 (Tex.1981). There the Supreme Court outlined the difference:

The essence of gross negligence is not the neglect which must, of course, exist. What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care.

*Burk Royalty Company*, 616 S.W.2d at 922 (emphasis in original). Consequently, we hold that the nature of gross negligence resulting in exemplary damages does not call for the imposition of the comparative negligence reduction in damages. We overrule Anderson's final point and affirm.

Costs taxed 98% against appellants jointly and severally; 2% against appellee.