**OLIN CORPORATION, Appellant,**

v.

**Darrell DYSON and David Casas, Jr., Appellees.**

No. C14–82–602–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 6, 1986.

Tom Alan Cunningham, Sawnie A. McEntire, Houston, for appellant.

Larry J. Doherty, Dale Friend, Houston, for appellees.

Before JUNELL, MURPHY and DRAUGHN, JJ.

## OPINION

JUNELL, Justice.

This negligence action comes to this Court on remand from the supreme court. It arose from the collision of Darrell Dyson's vehicle with a parked crane (cherrypicker) owned by Olin Corporation. The cherrypicker was supporting a section of overhead pipe that ran parallel to a two lane roadway and by necessity extended four feet into Dyson's lane. The jury found Dyson negligent in failing to keep a proper lookout and in failing to make timely application of his brakes. Olin Corporation was found to be grossly negligent in one or more of the following acts or omissions: (1) in failing to post a flagman; (2) in failing to erect barricades; (3) in failing to provide flashing lights; and (4) in leaving the cherrypicker on the paved portion of the road.

This court issued its opinion, *Olin Corp. v. Dyson,* 678 S.W.2d 650 (Tex.App.—Houston [14th Dist.] 1984, *rev'd and remanded,* 692 S.W.2d 456), holding that the evidence was factually insufficient to support the jury's finding of gross negligence against Olin Corporation. The Texas Supreme Court in its opinion, *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985), held that this court erred in interpreting the elements of gross negligence as stated in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex. 1981) and remanded to this court for reconsideration of Olin's insufficiency point. The supreme court stated that the correct definition of gross negligence was as follows:

The essence of gross negligence is not the neglect which must, of course, exist.

What lifts *ordinary* negligence into *gross* negligence is the mental attitude of the defendant; that is what justifies the penal nature of the imposition of exemplary damages. The plaintiff must show that the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he didn't care. Such conduct can be active or passive in nature.

*Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981). This court in its interpretation of that definition stated that to establish gross negligence "the plaintiff must prove two elements: (1) the defendant knew of the existence of an *unreasonable* peril and (2) the defendant's acts or omissions demonstrated he was indifferent to the safety of the plaintiff." We held that the evidence was insufficient to show that Olin knew that parking the cherrypicker in plain view created an unreasonable peril. *Olin Corp. v. Dyson*, 678 S.W.2d at 657, 658. The supreme court held this interpretation to be erroneous for the following reason:

> *Burk Royalty* does not require a new and independent examination of the unreasonable nature of the peril. Rather the focus is on the mental attitude of the person charged and whether acts or omissions by that person display a conscious and deliberate disregard for the interest or safety of others. *Burk Royalty* at 922; *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex. 1985). The court of appeals injected an additional element of proof by re-evaluating the reasonableness of Olin's conduct in determining the gross negligence issue.

*Dyson v. Olin Corp.*, 692 S.W.2d at 457, 458. The supreme court has made it clear that the plaintiff does not have to prove the defendant knew the peril was unreasonable; the plaintiff need only show that the defendant knew of the existence of a peril.

We recognize that the supreme court's opinion constitutes the law of this case and we are bound by it.

 As we stated in our original opinion, there is ample evidence in this record to show that Olin knew that parking the cherrypicker where it did created a peril. It partially obstructed one lane of traffic on a public road. A vehicle traveling in the lane obstructed by the cherrypicker would have to cross into the opposing lane of traffic to safely pass it.

Under the supreme court's opinion we are not to independently examine the unreasonable nature of the peril. Therefore, we conclude that there is sufficient evidence to prove the first of the two elements of gross negligence: that Olin knew of the existence of the peril. Having reached this conclusion, we next consider whether Olin's conduct demonstrated indifference to the safety of people traveling in the Dyson vehicle. Olin did absolutely nothing about the known peril. It posted no flagman, erected no barricades, provided no flashing lights. We hold, therefore, that the evidence is sufficient to support the jury finding of gross negligence on the part of Olin.

In this court's original opinion we held the trial court's award to Dyson of actual damages of $16,404.17 should be reduced by twenty-five percent, the percentage of Dyson's comparative negligence as found by the jury. That part of our decision was not affected by the supreme court decision.

 In the original opinion we did not rule on the question whether the $115,-000.00 punitive damage award to Dyson should also be reduced by the twenty-five percent comparative negligence of Dyson. Olin's seventh point of error requires us now to pass on this question. Appellant relies on *Pedernales Electric Cooperative, Inc. v. Schulz*, 583 S.W.2d 882 (Tex.Civ. App.—Waco 1979, writ ref'd n.r.e.), as authority supporting its contention that the punitive damages award should be so reduced. The opinion of the Waco Court of Civil Appeals in *Pedernales* contains a statement supporting appellant's conten-

tion; however, such statement was dictum in that opinion. In that personal injury case the jury had found Pedernales grossly negligent and one of the plaintiffs ordinarily negligent. Then the jury found that the occurrence made the basis of the suit was caused forty-five percent by the negligence of the plaintiff and fifty-five percent by the negligence of Pedernales. In another issue the jury awarded $100.00 exemplary damages to the negligent plaintiff. The trial court reduced the exemplary damages award by $45.00. The non-negligent plaintiff was awarded $4,900.00 exemplary damages by the jury and, of course, the trial court did not reduce that amount. Only the defendant Pedernales appealed, and the contention by Pedernales on appeal was that TEX.REV.CIV.STAT.ANN. art. 2212a (the comparative negligence statute) has abolished gross negligence as a viable ground of recovery and has substituted therefor a comparison of negligence of all degrees between the parties. This contention by Pedernales was rejected by the Waco Court of Civil Appeals and the judgment of the trial court was affirmed. In view of the fact that the jury had awarded the negligent plaintiff only $100.00 in exemplary damages, it is not surprising that he did not cross-appeal and contend that the trial court had erred in reducing the award by reason of the forty-five percent contributory negligence finding.

There is, however, a case decided since *Pedernales* that squarely presented the question whether an award of exemplary damages for gross negligence must be reduced by the amount of comparative negligence of the plaintiff. In that case, *Anderson v. Trent*, 685 S.W.2d 712 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), the trial court had declined to reduce the exemplary damages by reason of the thirty-five percent comparative negligence of the plaintiff's deceased wife, who died in the collision made the basis of the suit. The Dallas Court of Appeals disagreed with the Waco court's *Pedernales* opinion for two reasons:

First, if exemplary damages were *only* for compensating the plaintiff, then an argument could be made that they should be reduced by the percentage of the plaintiff's comparative negligence. However, the paramount purpose for awarding exemplary damages is *not* to compensate the plaintiff, but to punish and set an example for others. *Missouri Pacific Railway Company v. Shuford*, 72 Tex. 165, 10 S.W. 408 (1888); *see also Pedernales*, 583 S.W.2d at 884–85. Consequently, it is incorrect to view the award of exemplary damages from the eyes of the recovering plaintiff; rather, the award should be viewed from the eyes of public policy. Second, if gross negligence, wanton conduct, or reckless disregard for the rights of others were a plain vanilla form of negligence, then comparative negligence would necessitate reduction in any damages. In Texas, however, while gross negligence has been defined in a myriad of ways, the distilled essence of those definitions is that ordinary negligence is not of the same ilk as gross negligence. Therefore, the two are not so analogous as to allow comparison for the purpose of reducing compensation.

*Anderson*, 685 S.W.2d at 714.

In *Anderson* the court held that the nature of gross negligence resulting in exemplary damages does not call for the imposition of the comparative negligence reduction in damages.

The decision in *Anderson* is supported by other jurisdictions. See *Shahrokhfar v. State Farm Mutual Automobile Insurance Company*, 634 P.2d 653 (Mont.1981); *Tampa Electric Co. v. Stone and Webster Engineering Corp.*, 367 F.Supp. 27 (M.D. Fla.1973); *Amoco Pipeline Co. v. Montgomery*, 487 F.Supp. 1268 (W.D.Okla.1980); *Wangen v. Ford Motor Co.*, 97 Wis.2d 260, 294 N.W.2d 437 (1980). See also Annot., 27 A.L.R.4th 319 (an article entitled "Effect of Plaintiff's Comparative Negligence in Reducing Punitive Damages Recoverable.")

We believe the better rule is that stated by the Dallas Court of Appeals in *Anderson* and in the above cited cases from other jurisdictions; therefore, we decline to re-

duce the exemplary damages award by reason of Dyson's comparative negligence and we overrule appellant's seventh point of error.

Since the original opinion of this court was issued, David Casas, Jr., the other appellee, has made a full settlement with Olin Corp. and is no longer a party in this case.

The judgment of the trial court in favor of Darrell Dyson and against Olin Corporation is reduced from $131,404.17 to the sum of $127,303.13. The remainder of the trial court's judgment is affirmed.

MURPHY, Justice, dissenting.

I respectfully dissent. I understand the Supreme Court has made it clear that the plaintiff does not have to prove that the defendant knew that the peril was unreasonable; the plaintiff need only show that the defendant knew of the existence of a peril.[1]

The majority concludes that because Olin posted no flagman, erected no barricades and provided no flashing lights, the evidence was sufficient to support the jury finding of gross negligence. In considering factual insufficiency points of error, the court examines the whole record to determine not only that there is some evidence to support the finding, but also to determine whether considering all the evidence, the finding is not manifestly unjust.

If it is so weak that the finding is manifestly unjust, the court will sustain the point. *Burnett v. Motyka*, 610 S.W.2d 735 (Tex. 1980); In re *King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1952). We concluded in our first opinion that the evidence was sufficient to show that Olin Corporation knew or should have known that parking the cherrypicker on the road without any warning devices or barricades created a peril. As stated in our first opinion, *Olin Corp. v. Dyson*, 678 S.W.2d at 658, a reasonable person would recognize the peril or risk of physical harm created by the parked cherrypicker.

It is the mental attitude of "conscious indifference" by the defendant that lifts ordinary negligence into gross negligence and justifies the penal nature of the imposition of exemplary damages. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex. 1981). *International Armament Corp. v. King*, 686 S.W.2d 595 (Tex.1985); *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1983).

But by what standard should it be determined whether the defendant was "consciously indifferent" to the safety of the plaintiff? The Supreme Court has not given any clear guidance on this question. The Supreme Court appears to have established the following guidelines. First, the indifference must be conscious, which means that the defendant must know or should have known of the existence of a

---

**1.** I consider this holding to be questionable. It is contrary to § 500 of Second Restatement of Torts which states:

> 500. Reckless Disregard of Safety Defined
> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, *knowing or having reason to know* of facts which would lead a reasonable man to realize, not only *that his conduct creates an "unreasonable risk" of physical harm to another,* but also that such risk is substantially greater than that which is necessary to make his conduct negligent. (emphasis added)

The Restatement requires knowledge of an unreasonable risk. To justify the punishment of a defendant it ought to be shown that the defendant *knew* or should have known that the risk of physical harm was *unreasonable*.

Indeed, the Supreme Court has recently said: "Thus, the test for gross negligence is both an objective and a subjective test. A plaintiff may prove a defendant's gross negligence by proving that the defendant had actual subjective knowledge that his conduct created an *extreme* degree of risk. In addition, a plaintiff may objectively prove a defendant's gross negligence by proving that under the surrounding circumstances a reasonable person would have realized that his conduct created an *extreme* degree of risk to the safety of others". (emphasis added). *Renee McCracken Williams et al. v. Steves Industries, Inc. d/b/a Ingram Equipment Company*, 29. TEX. SUP.CT.J. 53, 54 (November 16, 1985)

This test, it seems to me, does require a new and independent examination of the nature or character of the peril.

peril. Second, the attitude of indifference is to be inferred from the nature or degree of the negligence or want of care. *Burk Royalty*, 616 S.W.2d at 922. But at what point does the negligence or want of care become great enough to prove "conscious indifference?"

I propose not that the standard be changed, but that it be further developed to be more objective. A true and objective test of "conscious indifference" is the existence of a high degree of probability that harm will result from the defendant's negligence or want of care. If a defendant knows or should know that his negligent act or omission will likely cause injury, it is reasonable to conclude that he was "consciously indifferent" to the consequences. However, if the defendant knows or should know that his negligence creates only a remote risk of injury, it is far less certain that he was "consciously indifferent."[2]

The concept that "conscious indifference" is indicated by a knowledge that the act or omission will probably cause injury is implicit in the Supreme Court's statements of the rule relating to punitive damages. In *Bennett v. Howard*, 141 Tex. 101, 170 S.W.2d 709, 712 (1943) and *Sheffield Division, Armco Steel Corp. v. Jones*, 376 S.W.2d 825, 828 (Tex.1964)[3] the court adopted the following statement as the general rule relating to exemplary damages:

"'In order that a recovery of exemplary damages may be sustained, the plaintiff must show, not merely that the defendant could have or ought to have foreseen and prevented the loss or injury of which the plaintiff complains, but that he acted intentionally or wilfully, or with a *degree of "gross negligence" which approximates a fixed purpose to bring about*

*the injury* of which the plaintiff complains. The mental factor is also described in the reports by the terms "malice," "fraud," "oppression," "recklessness," and the like. Regardless of the expression which is used to describe it, the purpose or intention of the defendant is determinative of his liability for exemplary damages.'" 13 Tex.Jur. p. 241, § 133. (emphasis added)

The language "acted ... with a degree of gross negligence which approximates a fixed purpose to bring about the injury ..." suggests that the "consciously indifferent" defendant is aware that his conduct is likely to cause injury.

The culpable mental state of "conscious indifference" is described in the rule as "recklessness." An element of "recklessness" is knowledge that the act or omission is likely to cause injury. The Second Restatement of Torts § 500 defines Reckless Disregard of Safety as:

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that *such risk is substantially greater than that which is necessary to make his conduct negligent.* (emphasis added)

The Restatement focuses on the degree of risk created by the actor. It must be substantially greater than that which is necessary to make his conduct negligent. Comment f, § 500, contrasts intentional misconduct and recklessness:

of the act which may ultimately lead to that harm." (emphasis added) *Williams*, 29 TEX. SUP.CT.J. 53, at 54, 55 (November 16, 1985).

---

**2.** The Supreme Court has apparently recognized this dilemma in the *Renee McCracken Williams* case, supra, when it stated:

"No exact line can be drawn between negligence and gross negligence. However, the character of the actual act required is determined by the terms used to define gross negligence: "conscious indifference" denotes a decision *in the face of impending harm* to another party, to not care about the consequences

**3.** In *Burk Royalty* the court overruled *Sheffield* because of its use of the "some care test" in determining legal sufficiency points. But the court did not disapprove of the rule as stated above.

... While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result ...

Comment g, § 500, contrasts negligence and recklessness:

... The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of risk, but this difference of degree is so marked as to amount substantially to a difference in kind.

In *Sheffield Division, Armco Steel Corporation v. Jones,* 376 S.W.2d 825, 829–830 (Tex.1964), the court equates "conscious indifference" with "wantonness."

It may be said that the accident in this case was the result of negligence because the company did not use the care that was required to avoid the accident. But the absence of this care does not authorize the jury to levy damages upon the company beyond the limit of compensation for the injury actually inflicted. To justify that penalty there must have been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences. The same rule is followed in most other jurisdictions. See 98 A.L.R. 262.

*Hinson v. Dawson,* 244 N.C. 23, 92 S.E.2d 393, 62 A.L.R.2d 806 holds that when an injury is caused by negligence any attempt to differentiate variations from slight to gross negligence is fraught with maximum difficulty. Wantonness, on the other hand, connotes intentional wrongdoing. Where malicious or wilful injury is not involved, wanton conduct must be alleged and shown to warrant the recovery of punitive damages. Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others.

In Texas "wantonness" has been defined as:

where the party doing the act or failing to act is conscious of his conduct, and without having the intent to injure, is conscious from his knowledge of existing circumstances and conditions, that his conduct will likely or probably result in injury.

*Brown v. Lundell,* 334 S.W.2d 616, 620 (Tex.Civ.App.—Amarillo 1960), *aff'd on other grounds,* 162 Tex. 84, 344 S.W.2d 863 (1961). Because "conscious indifference" and "wantonness" are virtually identical in meaning, the existence of such mental state ought to be determined by the same means, namely the probability of injury.

In other jurisdictions that follow the Texas approach to punitive damages the culpable mental state, whether it is described as "conscious indifference," "wantonness," or "recklessness," includes an awareness that the actor's conduct will probably cause injury.

"Wantonness" is the conscious doing of some act or the omission of some duty under the knowledge of the existing conditions, and conscious that from the doing of such act or omission of such duty injury will likely or probably result.

*Kilcrease v. Harris,* 259 So.2d 797 (Ala. 1972).

In Idaho, then, so long as the evidence shows that there has been an injury to the plaintiff from an act which is an *extreme deviation from reasonable standards of conduct,* and that the act was performed by the defendant with an understanding of or a *disregard for its likely consequences* ... it is appropriate for the trier of fact to award punitive damages. (emphasis added)

*Linscott v. Ranier National Life Ins. Co.,* 100 Idaho 854, 606 P.2d 958, 962 (1980). In *Taylor v. Superior Ct. of Los Angeles Cty.,* 24 Cal.3d 890, 598 P.2d 854, 157 Cal. Rptr. 693 (1979) the court held that punitive damages are recoverable in a personal injury action against an intoxicated driver. The court stated that to justify an award of punitive damages on the basis of conscious

disregard of the safety of others, "the plaintiff must establish that the defendant was aware of the probable dangerous consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences." *Taylor,* 598 P.2d at 856. The dissenting opinion in *Taylor,* 598 P.2d at 864, stresses that this "test requires *probable* dangerous consequences."

Although the "probability of injury" approach has not yet been applied by Texas courts, its application would be harmonious with and in furtherance of the principles of punitive damages as thus far developed by the Supreme Court. Because of the soundness of this approach we should use it in reviewing the sufficiency point before us. Thus, the issue before us is whether the evidence is sufficient to show that Olin Corporation was "consciously indifferent" to the safety of Dyson and this should be tested by whether there is sufficient evidence which shows Olin Corporation knew or should have known that leaving the cherrypicker on the road without any warning devices or barricades was likely to cause injury.

The cherrypicker extended several feet into the air supporting a section of pipe. It was parked in broad daylight and was plainly visible to drivers on the road. The road was straight with the exception of a curve about 300 feet from it.[4] The cherrypicker obstructed only four feet of the lane and did not block a driver's vision of any on-coming traffic. Dyson testified that a dip in the road beyond the cherrypicker prevented him from seeing a van in the opposing lane of traffic. This is contradicted by the testimony of Darryl A. Pillans who was a bystander at the accident scene. He testified that there was no van or any other vehicle. He further states that the dip in the road was a small one, not more than four or five inches, and not large enough to conceal a van. The photographs of the accident scene admitted into evidence show the road to be level with no dip large enough to conceal a vehicle.

In these conditions it is highly probable that a driver would see the cherrypicker in time to either stop or safely maneuver around it. Although the cherrypicker created some risk of injury, it was not a likely one. This is demonstrated by the fact that previous to Dyson's accident Olin had used cherrypickers to repair pipe along the road many times for several years without mishap. Because there is no direct evidence of conscious indifference and the circumstantial evidence weighs heavily towards the conclusion that the risk of injury created by Olin's negligence was remote, I would hold that the evidence is insufficient to support the jury's finding of gross negligence.

---

**4.** Dyson testified that he was about forty to fifty yards from the cherrypicker before he realized it was parked in the road and not moving. He did not give an opinion as to the distance from the curve to the cherrypicker.