**ALLIED GENERAL AGENCY, INC.**
**and John Michael Poland,**
**Appellants,**

v.

**Jerry C. MOODY, Appellee.**

No. 05–89–00388–CV.

Court of Appeals of Texas,
Dallas.

March 13, 1990.

Rehearing Denied April 18, 1990.

Larry Hallman, Joann N. Wilkins, Dallas, for appellants.

William A. Smith, Dallas, for appellee.

Before McCLUNG, LAGARDE and OVARD, JJ.

## OPINION

McCLUNG, Justice.

Jerry C. Moody, a policy holder, brought suit against his insurance carrier and its agent for damages, when his claim for loss of his stolen car was denied, and received a favorable jury verdict.

Allied General Agency and John Michael Poland (appellants) allege numerous trial errors. We affirm the judgment of the trial court.

Jerry C. Moody owned a one-of-a-kind highly customized 1981 Cadillac Seville convertible. The vehicle also had a customized

license plate with a distinctive logo which read, "Frontera Truck Parts." Moody owned and operated Frontera Truck Parts. Through his insurance agent, Gerald Campbell, Moody purchased a policy of comprehensive and collision insurance covering this automobile from appellant Allied General Agency. The premium was $2,800 per year. An endorsement to the policy had a "designated driver" clause which excluded coverage for the vehicle unless it was being driven by Moody or was being driven by someone Moody approved in a parade, and for promotional purposes. On December 5, 1985, Chris Livingston, a paint and supply salesman, borrowed the Cadillac to park in front of the Monarch Paint Company store, one of Livingston's clients, for a trade show. Moody knew that representatives from truck repair shops would attend this trade show and by displaying his vehicle, believed Frontera would be promoted. After the show ended, Livingston drove the car to his home and the next day used it to take a man from the trade show to the airport.

On his return from the airport, Livingston stopped at Red Bird Mall to shop and eat lunch. While he was inside the mall the car was stolen and never recovered. Moody submitted a claim for his loss. His loss was denied by a letter stating that the vehicle was not being used for promotional purposes at the time of the theft; that no special proof of claim form was submitted within sixty days of the date of loss; and, that Moody committed fraud on the company by overvaluing the vehicle on the policy.

Moody's suit alleged that appellants (1) breached the contract of insurance, (2) knowingly violated the Texas Deceptive Trade Practices Act (DTPA), (3) knowingly violated article 21.21 of the Texas Insurance Code, and (4) breached a common law duty of good faith and fair dealing and sought punitive damages.

Appellants first contend that the trial court erred in doubling the amount of actual damages. The jury found: that the vehicle was being used for promotional purposes at the time it was stolen; that the reasonable market value of the vehicle at that time was $40,000; that appellants engaged in an unconscionable action or course of action in violation of DTPA section 17.50(a)(3); that such action was the producing cause of the damages to Moody of $40,000; that appellants breached their duty of good faith and fair dealing and acted with conscious indifference in handling the claim. The jury awarded punitive damages in the amount of $7,500 against each appellant. The court entered judgment in the amount of $120,000, prejudgment interest, and attorneys fees.

Moody contends that he is entitled to recover the additional damages under section 16(b)(1) of article 21.21 of the Texas Insurance Code, because appellants violated section 17.46 of the DTPA by breaching their duty of good faith and fair dealing. The DTPA and the Insurance Code each grant relief for unfair or deceptive acts or practices in the business of insurance. *See* TEX.BUS. & COM.CODE ANN. § 17.50(a)(4) (Vernon 1987); TEX.INS.CODE ANN. art. 21.-21 §§ 4, 16 (Vernon Supp.1989). The business of insurance includes the investigation and adjustment of claims and losses. *Aetna Casualty & Surety Co. v. Marshall*, 724 S.W.2d 770, 771–72 (Tex.1987).

Section 16 of the insurance code permits recovery by any person who has been injured by another's engaging in:

[1] any of the practices declared to be unfair or deceptive by Section 4 of article 21.21;

[2] conduct defined in rules or regulations lawfully adopted by the Board under article 21.21 as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance; or

[3] any practice defined by section 17.46 of the Business and Commerce Code, as amended, as an unlawful deceptive trade practice.

TEX.INS.CODE ANN. art. 21.21 § 16(a) (Vernon 1989).

In *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex. 1988) the court found that section 4(b) of Insurance Board Order 18663 section (a) prohibited unfair trade practices that are determined pursuant to law to be an unfair

deceptive act or practice. *Id.* The court further noted that although a jury finding does not constitute "a determination of law," the court is empowered to determine whether conduct constitutes an unfair or deceptive act. *Id.* As between an insurer and the insured, there is a duty on the part of the insurer to deal fairly and in good faith in the processing of claims. *Arnold v. National County Mutual Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987). An insurer breaches the duty of good faith and fair dealing by failing to promptly and equitably pay an insured's claim when liability becomes reasonably clear. *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 212–13 (Tex.1988). Therefore, an insurer's lack of good faith in handling a claim is an unfair or deceptive act. *Vail,* 754 S.W.2d at 135.

The court went on to note that section 16 of article 21.21 also prohibits an insurance company from engaging in any act or practice defined by DTPA section 17.46. Although section 17.46 of the DTPA enumerates specific acts as "false, misleading, or deceptive acts or practices," the enumeration does not constitute an exclusive list of acts that violate the prohibition against deceptive trade practices. *Spradling v. Williams,* 566 S.W.2d 561, 564 (Tex.1978). Section 17.46 encompasses any type of business activity that deceives consumers. *Id.* Section 16 of article 21.21 of the insurance code makes actionable *any* violation of DTPA section 17.46 and thus, section 16 of article 21.21 incorporates any *unlisted* practice that is determined to be false, misleading, or deceptive. *Vail,* 754 S.W.2d at 135.

In *Vail,* the jury found that Texas Farm had engaged in deceptive acts because of their intentional failure to exercise good faith in the investigation, processing, and denial of the claim made the basis of the lawsuit. The court held that Vail stated and proved a cause of action under DTPA section 17.50(a)(4) and article 21.21, section 16 of the Insurance Code by pleading and proving that Texas Farm had committed an unlisted deceptive trade practice (lack of good faith in handling the claim) under DTPA section 17.46. *Vail,* 754 S.W.2d at 136.

■ We conclude that a common law cause of action can serve as the basis for a violation under section 17.46 of the DTPA or under article 21.21 section 16 of the insurance code. Under section 16(b)(1) of the insurance code, any plaintiff who prevails is entitled to recover actual damages. If the trier of fact finds the defendant *knowingly* committed the acts complained of "the court shall award, in addition, two times the amount of actual damages." Here, the jury found that appellants breached their duty of good faith and fair dealing, that they acted with an entire want of care in the handling of the claim, and that the conduct was a result of conscious indifference to the rights of Moody. This burden of proof is as great, if not greater, than the burden imposed in proving a finding of a "knowing" violation of section 16 of article 21.21. *See Olin Corp. v. Dyson,* 709 S.W.2d 251, 252 (Tex.App.—Houston [14th Dist.] 1986, no writ).

■ Appellants contend there was both no evidence or insufficient evidence to support the jury's finding that the car was being used for promotional purposes when it was stolen. A no evidence point is an attack on the legal sufficiency of the evidence. The standard of review is set out in *In Re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951). An insufficient evidence point is an attack on the factual sufficiency. The standard of review is set out in *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). We must review all of the relevant evidence in consideration. If the evidence is factually sufficient, the no evidence point also fails. We will consider both these points together.

The policy which insured the vehicle stated:

SCHEDULED DRIVER OF ENDORSEMENT

(ALL COVERAGES)

In Consideration Of The Reduced Premium Charged, It Is Hereby Understood and Agreed No Coverage is Afforded Any Vehicle Insured Under the Above Captioned Policy While Being Operated By any Driver Than the Drivers Listed Below:

| NAME | DATE OF BIRTH | LICENSE NO. |
|------|---------------|-------------|
| Jerry C. Moody | 1/8/44 | 04995049 |

Other drivers as approved by Jerry Moody for <u>driving in parades only</u>, and promational [sic] purposes.

(Emphasis original.)

Moody testified that at the time the vehicle was stolen, it was being used for promotional purposes. Also, that when the vehicle was being driven, it was being used to promote his business. As Moody explained, any time the vehicle was shown or driven, especially with the "Frontera Truck Parts" license plate logo on the front, people would associate the vehicle with Frontera Truck Parts and thereby promote his business through name recognition. Moody said he bought the vehicle because the uniqueness of the car would attract attention to his business, the sale of truck parts. Moody testified the vehicle would promote his business at the trade show for Monarch Paint Company because Livingston would sell paint to many bodyshops that purchase used truck parts. There were representatives from truck shops in attendance at the trade show.

Moody's insurance agent, Campbell, expressed the opinion that when the public sees a company's logo on Moody's unique automobile, that constitutes business promotion. Campbell compared the Moody vehicle containing the Frontera logo on the front with a mobile billboard that would draw the public's attention. The driver, Livingston, confirmed that when the vehicle was parked in front of Monarch, he received several comments concerning the ownership of the vehicle.

The jury heard several witnesses explain how the use of the car was for "promotional purposes" when it was stolen. The jury viewed exhibits of a license plate with the Frontera logo on it similar to the one that was on the vehicle, a picture of the vehicle showing its eye-catching nature, and the actual insurance agreement with the typed addition "promational" [sic] purposes."

The appellants argue that the automobile had been borrowed for the express purpose of a trade show at the Monarch Paint Company store in Arlington and that at the time the car was stolen, all connection with that purpose had ceased, and the car was not being used for promotional purposes when stolen, therefore, the jury verdict is contrary to the evidence.

The jury heard all of the above evidence and was able to view the demeanor of each witness as well as view all of the exhibits. As fact finders, it was within the jury's province to weigh the evidence and to accept or to reject it as they thought proper. *See Anderson v. Trent*, 685 S.W.2d 712, 713 (Tex.App.—Dallas 1984, writ ref'd n.r. e.). We hold that weighing all the evidence, favorable and unfavorable, the jury had sufficient evidence upon which to support its finding. While a different jury might reach a different conclusion, we may not substitute our judgment for theirs. *Anderson v. Trent*, 685 S.W.2d at 713.

■ Appellants next complain that there was no evidence or insufficient evidence that they engaged in an unconscionable action or course of action. Under section 17.45(5) of the DTPA, an unconscionable action or course of action means an act or practice which, to a person's detriment:

(A) Takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Appellants appear to argue that because Moody had no direct contact with them they could not have committed an unconscionable action or course of action against him. However, Campbell, as Moody's insurance agent, acted on his behalf at all times, and was in direct contact with appellants. We hold there is no merit to this argument.

The initial denial of Moody's claim came through a letter from a New York attorney representing appellants stating three grounds: (1) Moody's alleged fraud in overvaluing the automobile in question; (2) the failure of Moody to submit a special claim form within sixty days from the date of loss; and (3) the theft took place while the auto was being used for other than promotional purposes.

At trial, part of appellants' defense was that there was fraud in the inducement regarding the purported overvaluation of the vehicle. Moody paid $30,000 to an individual for the car. Appellants attempted to prove the auto was worth approximately $15,600 and that the $40,000 policy was obtained through fraudulent overvaluation. Their proof of fraud came from the deposition testimony of appellants' expert that the auto was only worth $15,600. The expert said he obtained his valuation from the "blue book" without respect to its rare customization or that it had been driven by well known personalities. Further, he stated that he had arrived at his valuation by looking at a photocopy of an instant photograph and looking up the retail price of an uncustomized Cadillac of the same model and year in the "blue book." The expert admitted that he had never inspected the car and had no idea how many miles were on it at the time of its theft. The expert conceded that he had never even seen this car or one that looked like it.

The jury also heard uncontroverted evidence that showed the claim was promptly reported and that appellants denied Moody's claim approximately ninety days after it was made and nearly sixty days after they received their investigative report; and that the appellants never provided their required proof of claim form within the sixty day period following the loss, despite frequent requests for it by Moody's insurance agent. This form was ultimately provided, but only after Moody's insurance agent threatened to pursue administrative action with the Texas State Board of Insurance if not received. In *Harco Nat'l Ins. Co. v. Villanueva*, 765 S.W.2d 809, 811 (Tex.App.—Dallas 1988, writ denied), an indemnity insurer denied a consumer insurance claim for damages for a lost auto based on fraud. The alleged fraud was that the consumer had arranged the theft of his auto but had secretly retained possession of it. The evidence presented at trial was that the insurer's investigator saw a Hispanic male who did not resemble the consumer in a car that looked like the insured's vehicle in another city. The evidence also showed that the consumer was not in town on the day of the theft, had no police record, had a good financial background, and had never before filed an insurance claim. The jury found that the denial of the claim was a breach of the duty of good faith and fair dealing.

In this case, the fraud alleged was overvaluation of the automobile. The allegation of fraud was based on the testimony of an expert who had not inspected the vehicle and gave no consideration to the customized nature of Moody's vehicle. Additionally, there was evidence that tended to disprove the appellants' allegation of fraud.

We conclude that the jury had sufficient evidence to support its finding. Moody was charged for and paid the full premium price. The jury could reasonably conclude that he received a valueless insurance policy when appellants refused to pay. There was the testimony of Moody and Campbell about their desire to procure insurance to cover very specific situations. The appellants requested specific language and Campbell provided the language which was accepted by appellants. Accepting the language and then later denying the claim using this same language would support the jury conclusion that appellants took advantage of Moody or there was a gross disparity between the value paid and the value received.

A finding of unconscionability was upheld in *Centroplex Ford, Inc. v. Kirby*, 736 S.W.2d 261 (Tex.App.—Austin 1987, no writ) and *R.S. Associates General Bldg. Contractors, Inc. v. Devona*, 610 S.W.2d 190 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). In both of these cases the value contracted for and paid by the consumer was never received resulting in a gross disparity between the consideration paid by the consumer and the value received. In *R.S. Associates*, 610 S.W.2d at 191, a home contracted for was never built. In *Centroplex Ford*, 736 S.W.2d at 263, a car was never repaired despite payments for the repairs. We therefore determine there was sufficient evidence to support the jury finding of unconscionability.

■ Appellants further contend that there was no evidence or insufficient evidence that they breached a duty of good faith and fair dealing or that their conduct amounted to conscious indifference to the rights of Moody. In *Arnold,* 725 S.W.2d at 167 the Supreme Court of Texas stated that the duty of good faith and fair dealing is breached when there is no reasonable basis for denial of a claim *or* delay in payment *or* a failure of the insurer to determine whether there is any reasonable basis for the denial or delay. Here, we have some evidence which could support a jury finding of any one or all three of these circumstances. See also, *Harco Nat'l Ins. Co.,* 765 S.W.2d at 811.

Appellants complain that the trial court allowed Moody to testify as to his intent and understanding of the language of the policy. They also argue the trial court erred in admitting evidence of the dictionary definition of the word "promotional," over objection.

■ We need not reach the question of whether Moody and Campbell's testimony was inadmissible, because appellants waived by subsequent cross-examination their right to complain. If the trial court commits error in overruling objections to the admissibility of testimony, objections are waived where, on cross-examination, the objecting counsel brings out the same testimony which was subject to his objection. *Missouri–Kansas–Texas R.R. Co. v. Shelton,* 383 S.W.2d 842, 848 (Tex.Civ. App.—Dallas 1964, writ ref'd n.r.e.), *cert. denied,* 382 U.S. 845, 86 S.Ct. 54, 15 L.Ed.2d 85 (1965). A similar result was reached in *Allstate Insurance Company v. Kelly,* 680 S.W.2d 595, 612 (Tex.App.—Tyler 1984, writ ref'd n.r.e.).

In this case, appellants objected to the testimony of Moody and Campbell regarding the coverage they sought, arguing it went to intent of the parties. Even if such testimony went to the intent of the parties and was inadmissible, such objection was waived by appellants' repeated cross-examination of Moody and Campbell as to their intent. For example, the following cross-examination occurred:

Question to Moody on cross-examination: So as I understand what your saying then, Mr. Moody, no matter whose [sic] got this vehicle, and no matter where it is, it's always being used for promotional purpose?

Question to Campbell on cross-examination: So in your viewpoint, anytime this car was being used by any person, under any circumstances, it is promoting his business?

Question to Campbell on cross-examination: OK, then your interpretation of that [for promotional purposes] is that it's [the vehicle] covered no matter what?

■ Appellants also complain that the trial court took judicial notice of the definition of the word "promotion" from the Oxford, Webster, and Merriam Dictionaries. The trial court also instructed the jury to use these definitions in rendering a verdict. The trial court must submit such instructions and definitions as shall be proper to render a verdict. TEX.R.CIV.P. 277. The trial court has considerable discretion in deciding what definitions and instructions are necessary and proper in submitting issues to the jury. The standard of review is that of abuse of discretion. *Green Tree Acceptance, Inc. v. Combs,* 745 S.W.2d 87, 89 (Tex.App.—San Antonio 1988, writ denied); *Rendon v. Texas Employers' Ins. Assoc.,* 599 S.W.2d 890, 896 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). Although rule 277 requires the trial court to define legal and other technical terms and submit explanatory instructions, the trial court is required to define or explain only those words or phrases given a peculiar and distinctive meaning by law. Words that have no special legal or technical meaning apart from their ordinary usage need not be defined. *See Taylor v. Lewis,* 553 S.W.2d 153, 159 (Tex.Civ.App.— Amarillo 1977, writ ref'd n.r.e.); *Miller v. Watson,* 257 S.W.2d 839, 841 (Tex.Civ.App. —Dallas 1953, writ ref'd n.r.e.). A dictionary is a source for determining the ordinary or common meaning of a word. We perceive no error by the court in providing

the jury with a dictionary definition of this word.

We affirm the trial court's judgment.