United States Court of Appeals,

Fifth Circuit.

No. 94-40482.

ESTATE OF Chester H. MOORE, Deceased, Caledonia Moore, Executrix, and Caledonia Moore, Petitioners-Appellees,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant.

June 2, 1995.

Appeal from the Decision of the United States Tax Court.

Before WISDOM, WIENER, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

The Commissioner of Internal Revenue (the Commissioner) appeals from a decision of the United States Tax Court that punitive damages awarded under Texas law in a malicious prosecution suit are excludable from gross income under 26 U.S.C. § 104(a)(2).[1] After this case was briefed and argued, we released our opinion in *Wesson v. U.S.*, 48 F.3d 894 (5th Cir.1995), in which we held that § 104(a)(2) does not exclude noncompensatory punitive damages such as those awarded under Mississippi law from gross income. Most of the issues raised by the parties were answered by *Wesson.* There remains only the question whether punitive damages awarded under Texas law are compensatory in a way that would bring them within §

---

[1]In 1989 Congress amended § 104(a), providing: "paragraph (2) shall not apply to any punitive damages in connection with a case not involving physical sickness or physical injury." However, the amendment applies only to amounts received after July 10, 1989, in taxable years ending in such date. The only Payments involved in this case were received during the 1987 and 1988 tax years.

1

104(a)(2)'s exclusion.  We hold that they are not and we reverse the decision of the Tax Court.

I.

Chester Moore was the sole shareholder and president of a Texas highway construction corporation.  Sometime before February 26, 1982, two highway construction contractors and two of their employees falsely implicated Mr. Moore in a price fixing scheme. After a trial in which Mr. Moore and his corporation were acquitted, Mr. and Mrs. Moore filed suit against the two corporations and the two employees, alleging malicious prosecution and invasion of privacy.  The Moores sought $6 million in actual damages and $6 million in punitive damages.

The Moores' suit went to trial in 1985.  Before the jury reached its verdict, the Moores settled with two of the defendants for a lump sum payment of $1 million, which is not in issue in this case.  The jury returned a verdict against the remaining defendants and awarded the Moores $2,898,000 in compensatory damages and $3 million in punitive damages.  After the jury reached its verdict, but before judgment was entered, the parties agreed that the Moores would receive a cash payment of $2,750,000 and an annuity contract that would provide Mr. Moore, or his estate or beneficiaries, with $233,523.13 per year for 15 years beginning in 1986.

In 1987 and 1988, the Moores received the annuity payments but did not report them as income on their federal income tax returns. They attached statements to the tax returns describing the payments and asserted that they were excluded from income under § 104(a)(2)

2

of the Internal Revenue Code.  In 1992, the Commissioner issued a notice of deficiency to Mr. Moore's estate (Mr. Moore died in 1990) and Mrs. Moore, asserting deficiencies in the Moores' income tax for 1987 and 1988.  This deficiency was based on the Commissioner's determination that the annuity payments were taxable gross income.

Moore petitioned the tax court, seeking a review of the Commissioner's determinations.  At the hearing, the parties stipulated that 49% of the annuity payments ($109,526.33 per year) represented compensatory damages and that the remaining 51% ($113,996.80 per year) represented punitive damages.  The Commissioner agreed that the compensatory portion of the annuity payments was excluded from gross income under § 104(a)(2), but argued that the punitive portion could not be excluded.  The tax court held that the punitive portion of the annuity payments was excludable from gross income and entered a decision finding no deficiency for the 1987 tax year and a deficiency totalling $2,816.00 for the 1988 tax year.  The Commissioner appealed.

## II.

### A.

We review a decision of the tax court using the same standards that apply to a decision of the district court. *Park v. C.I.R.,* 25 F.3d 1289, 1291 (5th Cir.1994), *cert denied, Jones v. C.I.R.,* --- U.S. ----, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994).  We review *de novo* the tax court's legal conclusions, and the tax court's fact findings for clear error. *Harris v. C.I.R.,* 16 F.3d

75, 81 (5th Cir.1994). As our review turns on a question of law—the proper interpretation of the Internal Revenue Code—our standard of review is *de novo. Reese v. U.S.,* 24 F.3d 228, 230 (Fed.Cir.1994). In approaching this case, we are guided by the policy that exclusions from income must be narrowly construed. *See United States v. Centennial Sav. Bank FSB,* 499 U.S. 573, 583, 111 S.Ct. 1512, 1519, 113 L.Ed.2d 608 (1991).

B.

Under § 104(a)(2) of the Internal Revenue Code, "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness" is excluded from gross income. 26 U.S.C. § 104(a)(2). This Court, along with the Ninth, Federal, and Fourth Circuits, has held that noncompensatory punitive damages do not fall within § 104(a)(2)'s exclusion. *See Wesson v. U.S.,* 48 F.3d 894 (5th Cir.1995); *Hawkins v. U.S.,* 30 F.3d 1077 (9th Cir.1994); *Reese v. U.S.,* 24 F.3d 228 (Fed.Cir.1994); *C.I.R. v. Miller,* 914 F.2d 586 (4th Cir.1990). The Sixth Circuit and the tax court have reached the opposite conclusion. *See Horton v. C.I.R.,* 33 F.3d 625 (6th Cir.1994); *Miller v. C.I.R.,* 93 T.C. 330, 1989 WL 104238 (1989), *rev'd* 914 F.2d 586 (4th Cir.1990).

We stated in *Wesson* that "To exclude damages awarded in a suit or otherwise under 104(a)(2), two requirements must be met. The taxpayer must show: first, that the underlying cause of action was tort-like under *Burke;* and second, that the damages were received on account of personal injury, that is, to compensate the injured

4

party for the personal injury." *Wesson v. U.S.,* 48 F.3d 894 (5th Cir.1995). The Commissioner does not dispute that the first prong of *Wesson* has been satisfied, but argues that the punitive damages awarded to Moore did not compensate for personal injury. Moore contends that exemplary damages awarded under Texas law serve a compensatory function, and should therefore be excluded from gross income under § 104(a)(2).[2] *See Wesson,* 48 F.3d at 901 (distinguishing *Horton* based on Sixth Circuit's determination that punitive damages in Kentucky serve, in part, a compensatory function).

## C.

Relying principally on the Texas Supreme Court's opinion in *Hofer v. Lavender,* 679 S.W.2d 470 (Tex.1984) and the cases cited therein, Moore contends that punitive damages awarded under Texas law are at least in part compensatory and should therefore be excluded from income. In *Hofer,* the Texas Supreme Court ruled that the estate of a deceased tortfeasor can be held liable for exemplary damages despite the futility of trying to punish a dead person because "Texas case law indicates that the public policy for exemplary damages includes equally important considerations other than punishment of the wrongdoer." *Id.* at 475. The court cited

---

[2]Moore also contends that the under Supreme Court's decision in *United States v. Burke,* 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), all damages received in connection with a suit for personal injuries or sickness, whether compensatory or punitive are excludable from gross income and that the Commissioner's position is inconsistent with the 1989 amendments to § 104(a). Because we considered and rejected these arguments in *Wesson,* we need not revisit them here. *See Wesson v. United States,* 48 F.3d 894.

Texas authority going back to the 19th century to the effect that exemplary damages may serve, *inter alia,* to compensate for inconvenience and losses too remote to be considered as elements of actual damages, and for the plaintiff's litigation expenses. *Id.* at 474-75. Moore also cites *Celotex Corporation v. Tate,* 797 S.W.2d 197, 208-09 (Tex.App.—Corpus Christi 1990, no writ), which relied on *Hofer* in rejecting a due process challenge to successive exemplary damage awards because exemplary damages serve to compensate for inconvenience and attorney's fees.

Despite *Hofer* and *Celotex,* we find Moore's argument unpersuasive. Notwithstanding any compensatory effect that punitive damages might have, the Texas Supreme Court has emphasized at least since 1847 that exemplary damages are awarded not to compensate the plaintiff for any injury received but to punish the defendant and to deter others. *See, e.g., Smith v. Sherwood,* 2 Tex. 461, 464 (1847); *Graham v. Roder,* 5 Tex. 141, 149 (1850); *Cotton v. Cooper,* 209 S.W. 135, 138 (Tex.Com.App.1919, opinion adopted); *Bennett v. Howard,* 141 Tex. 101, 170 S.W.2d 709 (1943); *Pace v. State,* 650 S.W.2d 64 (Tex.1983); *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 555-56 (Tex.1985); *Lunsford v. Morris,* 746 S.W.2d 471 (Tex.1988); *Transportation Insurance Co. v. Moriel,* 879 S.W.2d 10, 16 (Tex.1994). This Court too has repeatedly stated that exemplary damages are not compensatory under Texas law. *Jenkins v. Raymark Industries, Inc.,* 782 F.2d 468, 474 (5th Cir.1986) ("The purpose of punitive damages is not to compensate the victim but to create a deterrence to the defendant,

6

and to protect the public interest."); *Maxey v. Freightliner Corp.,* 665 F.2d 1367, 1378 (5th Cir.1982) ("[I]t is well established that the purpose of punitive damages is not to compensate those who have felt the loss, but it is instead to create a deterrence to the wrongdoer."); *Ratner v. Sioux Natural Gas Corp.,* 719 F.2d 801, 804 (5th Cir.1983) ("The award of punitive damages is unconcerned with compensation; it is intended to punish the wrongdoer and deter the commission of similar offenses in the future.").

We also note that the year after the Texas Supreme Court released its opinion in *Hofer,* the court determined that prejudgment interest is not available on exemplary damages precisely because of their non-compensatory nature. The court stated: "Punitive damages are intended to punish the defendant and to set an example to others.... They are assessed over and above the amount of damages necessary to indemnify the plaintiff. The plaintiff can thus be made whole even if prejudgment interest is not awarded on punitive damages." *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 555-56 (Tex.1985) (citation omitted).

Texas courts have also rejected arguments that punitive damages should be reduced in proportion to the percentage of negligence attributed to the plaintiff. Reduction of punitive damages is not appropriate because "[t]he purpose of awarding exemplary damages is not to compensate the plaintiff, but to punish and set an example to others." *Elbar, Inc. v. Claussen,* 774 S.W.2d

45, 53 (Tex.App.—Dallas 1989, writ dismissed as moot); *see also Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 922 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Turner v. Lone Star Indus., Inc.,* 733 S.W.2d 242 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd, n.r.e.); *Hondo's Truck Stop Cafe, Inc. v. Clemmons,* 716 S.W.2d 725, 726 (Tex.App.—Corpus Christi 1986, no writ); *Olin Corp. v. Dyson,* 709 S.W.2d 251, 253-54 (Tex.App.—Houston [14th Dist.] 1986, no writ); *Anderson v. Trent,* 685 S.W.2d 712, 714 (Tex.App.—Dallas 1984, writ ref'd n.r.e.); *but cf. Pedernales Electric Cooperative, Inc. v. Schulz,* 583 S.W.2d 882 (Tex.Civ.App.—Waco 1979, writ ref'd n.r.e.) (acknowledging that the "overriding policy consideration in the award of exemplary damages is as punishment for gross negligence as distinguished from compensation," but holding that comparative negligence statute requires reduction of exemplary award in proportion to the plaintiff's contributory negligence).

Finally, we note that when the jury's award is reviewed for reasonableness, the court considers: "(1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety." *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). There is no requirement that exemplary damages bear any relation to the plaintiff's inconvenience, attorney's fees, or losses too remote to be considered as elements of actual damages. The jury may consider such factors, if it so chooses, but need not do so. *See, e.g.,*

8

*Byler v. Garcia,* 685 S.W.2d 116, 120 (Tex.App.—Austin 1985, writ ref'd n.r.e.) (stating that, while it is true that the jury may include attorney's fees in its exemplary damage award, they are not a necessary element in the computation of exemplary damages); *Landa v. Obert,* 45 Tex. 539, 544 (1876).

### D.

The overwhelming weight of Texas authority holds that exemplary damages are not awarded to compensate the plaintiff for any injury. The fact that Texas courts may allow the jury to consider factors such as the plaintiff's litigation costs in determining the appropriate measure of exemplary damages does not change the fundamental truth that exemplary damages in Texas are awarded on account of and in proportion to the defendant's wrongful conduct. We are satisfied that exemplary damages are not awarded "on account of" any personal injury as Congress intended in § 104(a)(2).

The decision of the tax court is reversed and this case is remanded for treatment in accordance with this opinion.

REVERSED AND REMANDED.