In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00098-CV
______________________________


ANGEL M. VACCA, Appellant
Â 
V.
Â 
ZELDA GLASS, ET AL., Appellees


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 01C0457-202


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Angel M. Vacca, an inmate currently residing in the Barry Telford Unit in New
Boston, Texas, sued several prison guards and administrators for causing Vacca to be
disciplined for an infraction he contends was contrived against him in retaliation for his
initiating a federal lawsuit. Vacca's amended petition named Zelda Glass, Ronald
Farrington, and Jonathan R. Rayburn as defendants. The trial court dismissed Vacca's
lawsuit after finding Vacca's petition had failed to satisfy the requirements set forth in
Chapter 14 of the Texas Civil Practice and Remedies Code. See Tex. Civ. Prac. & Rem.
Code Ann. Â§ 14.004 (Vernon 2002) (inmate who proceeds in forma pauperis must file with
petition (a) affidavit listing all other lawsuits previously brought, except those under Texas
Family Code, and (b) certified copy of inmate's trust account). It is from that dismissal
which Vacca now appeals.
Â Â Â Â Â Â Â Â Â Â As a general rule, Texas appellate courts have jurisdiction only over final judgments. 
See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2001). A judgment is final for
purposes of appellate jurisdiction if it disposes of all issues and parties in a case and no
further action is required to determine the controversy. Mafrige v. Ross, 866 S.W.2d 590,
591â92 (Tex. 1993); Houston Health Clubs, Inc. v. First Court of Appeals, 722 S.W.2d 692,
693 (Tex. 1986); North East Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 895 (Tex.
1966). A judgment that fails to dispose of all issues and all parties before the trial court is
neither final nor, with certain exceptions, appealable. Park Place Hosp. v. Estate of Milo,
909 S.W.2d 508, 510 (Tex. 1995).
Â Â Â Â Â Â Â Â Â Â In the case now on appeal, the trial court's judgment of dismissal states "that all
claims against Defendants Zelda Glass, Mendell Glass and Ronald Farrington are
DISMISSED as frivolous." The trial court's judgment does not dispose of Vacca's claims
against Jonathan R. Rayburn, and it contains no "Mother Hubbard" clause. Thus, it is not
a final, appealable judgment. Cf. id. 
Â Â Â Â Â Â Â Â Â Â None of the exceptions to the general requirement that a judgment be final before
it may be appealed apply to Vacca's appeal. Accordingly, we dismiss Vacca's appeal for
want of jurisdiction.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Donald R. Ross
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice


Date Submitted:Â Â Â Â Â Â September 9, 2004
Date Decided:Â Â Â Â Â Â Â Â Â September 10, 2004



AN STYLE="font-family: Times New Roman"> An appeal from the denial of a motion for directed verdict is in essence a challenge
to the legal sufficiency of the evidence. Haynes & Boone, L.L.P. v. Chason, 81 S.W.3d
307, 309 (Tex. App.-Tyler 2001, pet. denied). In determining whether there is no evidence
of probative force to support a jury's finding, all the record evidence must be considered
in the light most favorable to the party in whose favor the verdict has been rendered, and
every reasonable inference deducible from the evidence is to be indulged in that party's
favor. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a
vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no
more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the
vital fact. Id. 

 When considering a factual sufficiency challenge to a jury's verdict, we must
consider and weigh all the evidence, not just that which supports the verdict. Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998). We can set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict
is clearly wrong and unjust. Id. at 407. When we review a punitive damage award, we
must detail the relevant evidence in our opinion, explaining why that evidence either
supports or does not support the punitive damage award. Tex. Civ. Prac. & Rem. Code
Ann. § 41.013 (Vernon 1997). Factors to be considered when determining the amount of
an award of exemplary damages include (1) the nature of the wrong; (2) the character of
the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and
sensibilities of the parties concerned; (5) the extent to which such conduct offends a public
sense of justice and propriety; and (6) the net worth of the defendant. Tex. Civ. Prac. &
Rem. Code Ann. Â§ 41.011 (Vernon 1997).

 As its first point of error, Dillard contends the trial court erred in denying its motion
for judgment notwithstanding the verdict, or alternatively, its motion for new trial, because
there was no evidence, or only factually insufficient evidence, to support the jury's finding
of false imprisonment. To prevail under a false imprisonment claim, a plaintiff must prove
(1) willful detention, (2) without consent, and (3) without authority of law. Sears, Roebuck
& Co. v. Castillo, 693 S.W.2d 374, 375 (Tex. 1985). 

 Dillard contends the third element is missing in this case. Dillard bases this
contention on the shopkeeper's privilege created by Texas Civil Practice and Remedies
Code Section 124.001. See Tex. Civ. Prac. & Rem. Code Ann. Â§ 124.001 (Vernon 1997). 
The shopkeeper's privilege expressly grants an employee the authority of law to detain a
customer to investigate the ownership of property, so long as (1) the employee has a
reasonable belief the customer has stolen or is attempting to steal store merchandise,
(2)Â the detention was for a reasonable amount of time, and (3) the detention was in a
reasonable manner. Wal-Mart Stores, Inc. v. Resendez, 962 S.W.2d 539, 540 (Tex. 1998). 
Dillard asserts there was no evidence Silva's detention was unreasonable. 

 In Resendez, the plaintiff sued Wal-Mart for negligence, false imprisonment,
intentional infliction of emotional distress, and malicious prosecution. Id. The jury found
no liability based on the malicious prosecution claim. Id. Because the jury found no basis
for a malicious prosecution claim, the Texas Supreme Court held Wal-Mart's belief that
Resendez had stolen or was attempting to steal store merchandise was necessarily
reasonable. Id. In this case, the jury also found no liability based on the malicious
prosecution; therefore, we must find Dillard's belief that items were being stolen as
reasonable, as a matter of law. 

 The second component of the shopkeeper's privilege is whether the detention was
for a reasonable amount of time. Silva testified he did not know the length of time he was
detained by Dillard. The last receipt obtained from Dillard by Silva was marked 1:31 p.m. 
Wallace testified she first noticed Silva around 1:30 or 1:45 p.m. She observed him for
about fifteen minutes until he went into a dressing room for five or six minutes. Shortly
after this, Silva was approached by Rivera and taken upstairs. The police report denotes
the patrol officers arrived on the scene at 3:23 p.m. to transport Silva to jail. 

 Dillard contends the evidence shows Silva was detained for approximately one hour,
perhaps a little longer. Silva agrees the detention lasted an hour or so. Dillard contends
that, even if the detention was longer than an hour, there was no evidence this was an
unreasonable amount of time for Rivera to question Silva and the store employees, and
to talk with officers at the police department and prosecutors at the district attorney's office. 

 In Resendez, the court held the ten to fifteen minutes in that case was not
unreasonable as a matter of law. Id. The court, however, made its decision "[w]ithout
deciding the outer parameters of a permissible period of time under section 124.001." Id. 
Here, both sides agree the detention was for at least an hour. Considering the totality of
the circumstances, we cannot say Silva was detained for an unreasonable length of time. 

 The third component of the shopkeeper's privilege is whether the detention was in
a reasonable manner. Again, Dillard contends there was no evidence the detention was
not reasonable. Silva testified, however, that Rivera accused him of theft and placed him
on the floor and handcuffed him. Silva said the officer emptied Silva's shopping bag onto
the floor. Silva testified people were around him when he was taken upstairs in handcuffs
and when he was later escorted to the police car. He further stated the officer and a
woman made fun of him while he was being detained upstairs. Silva stated that, when the
city police came to take him into custody, Rivera again placed him on the floor with his
knee in his back and exchanged handcuffs with the city police. He further testified that he
asked Rivera many times to check his car for the receipt, but these requests were ignored
and that, during the entire time he was detained, no one asked him for any explanation. 
Dillard, on the other hand, points to Rivera's testimony, which "flatly contradicted Mr. Silva
at every turn." 

 Silva's testimony provided the jury with evidence the detention was not conducted
in a reasonable manner. Although the descriptions of the detention by Silva and Rivera
were different, when parties introduce conflicting testimony in a jury trial, it is the duty of
the jury to determine which witness is more credible. Jones v. Tarrant Util. Co., 638
S.W.2d 862, 866 (Tex. 1982). The verdict indicates the jury found Silva's story more
credible than Rivera's. 

 Generally, the reasonableness of a detention is a question of fact for the jury to
decide. See Wal-Mart Stores, Inc. v. Odem, 929 S.W.2d 513, 520 (Tex. App.-San Antonio
1996, writ denied). Silva's testimony was more than a scintilla of evidence to support the
jury's finding, and its verdict was not so contrary to the overwhelming weight of the
evidence that it was clearly wrong and unjust. Dillard's first point of error is overruled.

 Dillard next contends the trial court erred in denying its motion for judgment
notwithstanding the verdict or, alternatively, its motion for new trial, because there was no
evidence, or only factually insufficient evidence, to support the jury's finding of intentional
infliction of emotional distress. To prevail under an intentional infliction of emotional
distress claim, a plaintiff must prove four elements: (1) the defendant acted intentionally
or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's
actions caused the plaintiff emotional distress; and (4) the emotional distress was severe. 
Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000).

 When the Texas Supreme Court recognized the tort of intentional infliction of
emotional distress, it specifically pointed out its trust for juries to resolve factual disputes
giving rise to this tort. Twyman v. Twyman, 855 S.W.2d 619, 622 (Tex. 1993). With
respect to a defendant's intent, a jury is free to discredit the defendant's protestations that
no harm was intended and to draw necessary inferences to establish intent. Id. at 623. 
With respect to recklessness, a jury may find a defendant acted recklessly if "he knows or
has reason to know . . . of facts which create a high degree of risk of . . . harm to another,
and deliberately proceeds to act, or fails to act, in conscious disregard of, or indifference
to that risk." Id. at 624. 

 Whether a defendant's conduct may reasonably be regarded as extreme and
outrageous, however, is a question of law. Wornick Co. v. Casas, 856 S.W.2d 732, 734
(Tex. 1993). Liability for outrageous conduct should be found only where the conduct has
been so outrageous in character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized
community. Twyman, 855 S.W.2d at 621.

 The Texas Supreme Court has greatly limited the availability of the tort of intentional
infliction of emotional distress by holding that such tort is available only in those situations
in which severe emotional distress is the intended consequence or primary risk of the
actor's conduct. Standard Fruit & Vegetable Co. v. Johnson, 985 S.W.2d 62, 67 (Tex.
1998). Redress for this tort is available only when the tortfeasor desired or anticipated the
plaintiff would suffer severe emotional distress. Id. Where emotional distress is solely
derivative of or incidental to the intended or most likely consequence of the actor's conduct,
recovery for such distress must be had, if at all, under some other tort doctrine. Id. A
claim for intentional infliction of emotional distress cannot be maintained when the risk that
emotional distress will result is merely incidental to the commission of some other tort. Id.
at 68.

 Silva points to the following facts as evidence of Dillard's outrageous conduct: Silva
was handcuffed, placed on the floor in front of other people, had his shopping bag dumped
on the floor, was made fun of by Dillard's employees, was placed on the floor again while
the handcuffs were exchanged, and was taken through a line of onlookers on his way to
the police car. Silva also contends the most important evidence of Dillard's extreme and
outrageous conduct is the fact "Dillard's knew before Mr. Silva was criminally prosecuted
that Mr. Silva had done absolutely nothing wrong!" In support of his contention that Dillard
knew of his innocence before his criminal trial began, Silva points to evidence that Dillard
was shown the receipt for the shirts and was shown the photograph (taken at the salon)
of him with the shirts. Silva contends:

 To subject a human being whom they knew to be innocent to potential
liability of up to 180 eighty [sic] days in jail and a $2,000.00 fine when a
simple telephone call would have ended the entire matter is outrageous,
extreme in the degree, atrocious, utterly intolerable, and clearly goes beyond
all bounds of decency.

 

 Despite Silva's contention Dillard knew of his innocence at the time of his criminal
trial, the jury found Dillard had probable cause to initiate criminal proceedings against him. 
This is evidenced by the jury's finding Dillard not liable on Silva's claim of malicious
prosecution. Therefore, the fact Dillard initiated criminal proceedings against Silva cannot
constitute outrageous behavior. 

 The remaining actions by Dillard that Silva contends were extreme and outrageous
were derivative of or incidental to Dillard's conduct in committing the tort of false
imprisonment. Therefore, recovery by Silva for his distress resulting from such conduct
must be had, if at all, under that tort doctrine. See id. at 67. Dillard's second point of error
is sustained. As its third point of error, Dillard contends the trial court erred in denying its motion
for judgment notwithstanding the verdict or, alternatively, its motion for new trial, because
there was no evidence, or only factually insufficient evidence, to support the jury's finding
of negligence. To prevail under a negligence claim, a plaintiff must show (1) a legal duty,
(2) a breach of that duty, and (3) damages proximately caused by the breach. Van Horn
v. Chambers, 970 S.W.2d 542, 544 (Tex. 1998). 

 Silva contends that all of the following evidence supports the jury's finding of
negligence on the part of Dillard: 

 1. The "obvious" incompetence of Wallace, the store clerk who testified
she witnessed Silva stealing;


 2. Dillard's negligence in hiring Wallace, when Wallace lied on her
resume by stating she had completed seventy-two credit hours at the
University of Texas, and when Wallace's only training in loss prevention
consisted of viewing a videotape;


 3. Wallace's negligence in making the initial report to Rivera that Silva
had stolen something; and


 4. Dillard's failure to investigate Silva's repeated claims of innocence
(both at the time of the incident and before the criminal trial when Dillard was
presented with alleged proof of his innocence).


 Dillard contends Silva alleged negligence in his pleadings in only two respects: the
hiring of Wallace, the sales associate who reported the suspected shoplifting, and Dillard's
failure to institute store policies to prevent these types of occurrences. Dillard
acknowledges an employer has a duty to adequately supervise and train its employees.
See Allen v. AÂ &Â T Transp. Co., 79 S.W.3d 65, 70 (Tex. App.-Texarkana 2002, pet.
denied). But, Dillard maintains any judgment based on negligent supervision or training
cannot be supported by Silva's pleadings. See Tex. R. Civ. P. 301. We agree with Dillard's
reading of Silva's pleadings. Because Silva is limited to the types of negligence alleged
in his pleadings, we cannot affirm any finding of negligence based on negligent training or
supervision of Dillard's employees. We therefore will limit our discussion to negligence
based on what Silva alleged was Dillard's negligent hiring of Wallace and Dillard's failure
to implement proper security procedures. 

 Silva offered no evidence to show Wallace was incompetent or that Dillard was
negligent in hiring her. Silva blames Wallace for what happened to him because she is the
one who started the incident by reporting her suspicions. Silva relies on being found not
guilty at the resulting criminal trial to prove she was unfit for her job. However, as noted
earlier, the jury found Dillard was not liable with respect to the claim of malicious
prosecution. Moreover, when the jury was asked to assign percentages concerning the
amount of contributory negligence attributable to Wallace, Dillard, and Silva, the jury found
Dillard sixty percent at fault and Silva forty percent at fault, but attributed no fault to
Wallace. Because the jury found Wallace was not negligent in this case, Dillard was not
negligent in hiring her with respect to the same facts. 

 As to Dillard's procedures, the following portions of Dillard's manual of rules and
procedures were read into the record by Rivera: 

 "Apprehension. Number One, The person must be observed in the actual
removal and/or concealment of merchandise. If merchandise is being taken
into a fitting room he must establish concealment by observing customer and
merchandise count and description taken into and from the fitting room."


 . . . .


 [Number Two:] "Where possible constant observation of the suspect must
be maintained by you, the security officer, or Dillard associates until the
apprehension is made."


 . . . .


 [Number Three:] "Usually and unless local laws permit otherwise the
suspect must be permitted to exit the premises prior to apprehension."


 . . . .


 Investigation number one: "You must act in a professional manner at all
times."


 . . . .


 No. 2, "Touching suspect in any manner should be avoided unless it
becomes necessary to maintain order in the particular situation. Handcuffs
should not be used unless suspect poses threat to customers or your own
personnel."


 . . . .


 Number Three: "You may detain a suspect for a reasonable amount of time
in order to conduct a reasonable investigation. If you determine there was
no crime committed, terminate the contact with the customer and apologize
for the inconvenience. If the customer wishes to make a complaint, refer
them to the manager only."


 Additional evidence from the rules and procedures manual showed it was Dillard's
policy for the security personnel to prepare thorough investigation reports of any incident
and to retain any evidence from the incident in a secured area, with all sales or price tags
kept as if the merchandise was to be returned to the floor. The record also contained
evidence that Dillard showed its employees a videotape about store security at the time
they were hired. Moreover, the testimony showed that, before Wallace called Rivera to
report her suspicions, she called her supervisor, who then instructed her to call security. 

 Silva argues inadequate procedures, but fails to identify those particular procedures
he deems inadequate. We find from the evidence that Dillard did have and implemented
adequate procedures. Dillard's third point of error is sustained. 

 Dillard next contends the trial court erred in denying its motion for judgment
notwithstanding the verdict or, alternatively, its motion for new trial, because there was no
evidence, or only factually insufficient evidence, to support the jury's actual damages
award. 

 In addressing damages, the jury was instructed to consider the following elements: 
physical pain and mental anguish, attorney's fees incurred in the original criminal
proceeding, and attorney's fees in the expunction proceeding. Considering those four
things, the jury was then asked to fill in a dollar amount for past damages and for future
damages. The jury answered $10,124.01 for past damages and $3,000.00 for future
damages. When a damages issue is submitted in broad-form, an appellate court cannot
ascertain with certainty what amount is attributable to each element. Excel Corp. v. Porras,
14 S.W.3d 307, 314 (Tex. App.-Corpus Christi 1999, pet. denied).

 Dillard contests these awards because they are based, at least in part, on Silva's
past and future legal expenses in connection with the criminal proceeding instituted against
him for which Dillard was found not liable. Dillard also contends the record is totally devoid
of any evidence to support an award for physical pain. We agree. However, because this
was a broad-form question which allowed the jury to provide a single answer for Silva's
physical pain and mental anguish, and his past legal fees, we still must address whether
there was evidence of mental anguish. 

 In order to recover for mental anguish, a plaintiff must offer either direct evidence
of the nature, duration, or severity of his or her anguish, thus establishing a substantial
disruption in the plaintiff's daily routine, or other evidence of a high degree of mental pain
and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. 
Saenz v. Fid. & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996). Mental
anguish does include mental sensation of pain resulting from such painful emotions as
grief, severe disappointment, indignation, wounded pride, shame, despair, and/or public
humiliation. McLure v. Tiller, 63 S.W.3d 72, 84 (Tex. App.-El Paso 2001, pet. filed). 
Recovery is warranted in such cases where the plaintiff's mental pain has risen to such a
level that it has rendered him or her incapable of dealing with certain everyday activities. 
Id. For instance, as a result of the mental pain, the plaintiff suffers from a myriad of
negative emotions; some of these emotions may manifest themselves in such a way as to
make it difficult for the plaintiff to eat, sleep, work, socially interact, or carry on any other
activity which, until the time of the alleged injury, he or she could accomplish on a day-to-day basis without difficulty. Id. 

 In this case, there was evidence that the incident had affected Silva in a greater way
than mere worry, anxiety, vexation, embarrassment, or anger. Several witnesses testified
that before the incident Silva was always happy, but after the incident his personality
changed. Silva's roommate testified Silva experienced nightmares as a result of the
incident. He testified Silva would cry about what had happened to him. There was
testimony of activities that Silva enjoyed before this incident, such as shopping and
dancing, that he no longer likes to do. Silva testified he suffered from depression because
of this incident. He further testified this incident caused him to lose his pride, "his dignity
[as] a citizen." This evidence is sufficient to support the jury's award of past and future
damages for mental anguish. Because the damages question submitted to the jury was
broad, evidence to support one of the elements is enough to support recovery of the
award. Dillard's fourth point of error is overruled.

 Dillard also contends the trial court erred in denying its motion for judgment
notwithstanding the verdict or, alternatively, its motion for new trial, because there was no
evidence, or only factually insufficient evidence, to support the jury's punitive damage
award. The jury found Dillard's conduct resulted from malice and awarded $50,000.00 in
punitive damages. 

 To recover exemplary damages in this case, Silva was required to prove by clear
and convincing evidence that the harm suffered resulted from malice. See Tex. Civ. Prac.
& Rem. Code Ann. Â§ 41.003(a)(2) (Vernon 1997). Malice means a specific intent by the
defendant to cause substantial injury to the claimant; or an act or omission which, when
viewed objectively from the standpoint of the actor at the time of its occurrence, involved
an extreme degree of risk, considering the probability and magnitude of the potential harm
to others, and of which the actor had actual, subjective awareness of the risk involved, but
nevertheless proceeded with conscious indifference to the rights, safety, or welfare of
others. Tex. Civ. Prac. & Rem. Code Ann. Â§ 41.001(7) (Vernon 1997). 

 The determination of whether to award exemplary damages and the amount of
exemplary damages to be awarded is within the discretion of the trier of fact. Tex. Civ.
Prac. & Rem. Code Ann. Â§ 41.010 (Vernon 1997). We are not free to reweigh the
evidence and set aside a jury's verdict merely because we feel a different result is more
reasonable. Ellis County State Bank v. Keever, 936 S.W.2d 683, 685 (Tex. App.-Dallas
1996, no writ). 

 The dissent contends the evidence is legally insufficient to sustain the punitive
damage award and asserts support for that position in the jury's finding that Dillard did not
maliciously prosecute Silva. The trial court, however, was careful to instruct the jury that
the definition of "malice" given in that question applied only "in this specific question." 
Likewise, in submitting the predicate question for punitive damages, the court instructed
the jury to apply the statutory definition of "malice" in that question only "as used in this
specific question." In applying those two definitions of "malice," it was not inconsistent-as
implied by the dissent-for the jury to find that Dillard maliciously caused harm to Silva in
its unreasonable detention of him, and also find that Dillard did not maliciously prosecute
him. 

 The dissent also contends the jury's finding that Silva was contributorily negligent
supports the position that the evidence is legally insufficient to sustain the punitive damage
award and concludes Silva had been adequately compensated by the actual damages the
jury awarded.

 It should be noted we have held against Silva on his negligence theory of recovery. 
But, even if we had held otherwise, the dissent's position is untenable because the
comparative negligence statute does not bar recovery of punitive damages. Anderson v.
Trent, 685 S.W.2d 712 (Tex. App-Dallas 1984, writ ref'd n.r.e.). In Anderson, the Dallas
court wrote:

 [T]he paramount purpose for awarding exemplary damages is not to
compensate the plaintiff, but to punish and set an example for others.
Consequently, it is incorrect to view the award of exemplary damages from
the eyes of the recovering plaintiff; rather, the award should be viewed from
the eyes of public policy. 


Id. at 714 (citations omitted).


 We find that the evidence supporting the punitive damage award in the instant case 
is legally and factually sufficient and, viewed "from the eyes of public policy," it is not
excessive. When considering whether punitive damages are excessive, we must consider: 
(1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of
culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and
(5) the extent to which such conduct offends a public sense of justice and propriety. Alamo
Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). 

 Here, the nature of the wrong was the emotional harm Silva sustained as a result
of this incident at Dillard. Silva's personality changed after the incident. He no longer liked
to do the same things, like shopping and dancing, that he enjoyed before the incident. 
Silva experienced nightmares and testified this incident at Dillard caused him to be
depressed. Silva's roommate testified about Silva crying. Silva also lost weight and sleep
because of this incident. He said he could not face his friends or do his work. He said this
incident caused him to lose "his dignity [as] a citizen."

 The character of the conduct involved and the degree of the wrongdoer's culpability
refer to evidence of Dillard's state of mind, the degree of its conscious indifference, and
any malice in its actions. See Keever, 936 S.W.2d at 687. The jury was instructed that
malice means a specific intent by Dillard to cause substantial injury to Silva; or an act or
omission by Dillard, which when viewed objectively from Dillard's standpoint at the time of
its occurrence, involved an extreme degree of risk, considering the probability and
magnitude of the potential harm to others; and of which Dillard had actual, subjective
awareness of the risk involved, but nevertheless proceeded with conscious indifference to
the rights, safety, or welfare of others. Under this definition, the jury concluded Dillard
acted with malice. Although Rivera and Silva told different versions of what happened, it
was up to the jury to decide which version of events to believe. See Jones, 638 S.W.2d
at 866. 

 Silva testified Rivera prevented him from taking medication for a migraine headache,
handcuffed him, placed him on the floor in front of other people, dumped his shopping bag
on the floor, made fun of him as he sat in the office, placed him on the floor again while the
handcuffs were exchanged, put his knee in his back, and then took him through a line of
onlookers on the way to a waiting police car. Silva further testified that no one asked him
for an explanation and that he told Rivera many times he had receipts for everything. 
While being led to the police car, Silva was crying and still begging to be allowed to go to
his car for the receipts. 

 The situation and sensibilities of the parties concerned refers to evidence of such
things as remorse, remedial measures, and ability to pay the punitive damages. Keever,
936 S.W.2d at 688. There was no remorse on the part of Dillard evidenced in the record. 
Dillard still denies the incident took place as Silva described. There was evidence Rivera
no longer works for Dillard; however, he testified this had nothing to do with his handling
of this incident, and no controverting evidence was introduced. 

 Finally, we examine the evidence in light of the extent to which the conduct offends
a public sense of justice and propriety. We conclude a rational jury could have found
Dillard's behavior in this incident offended the public sense of justice and propriety. See
Rice Food Mkts., Inc. v. Ramirez, 59 S.W.3d 726 (Tex. App.-Amarillo 2001, no pet.). 
Dillard's fifth point of error is overruled. 

 We reverse the judgment to the extent it adjudges Dillard liable for intentional
infliction of emotional stress or for negligence. We affirm the judgment in all other
respects.


 Donald R. Ross

 Justice











 


DISSENTING OPINION

 I do not believe the evidence is legally sufficient to sustain the punitive damage
award.

 To support exemplary damages, a plaintiff must prove by clear and convincing
evidence that the harm resulted from malice. The first prong of malice requires proof of
an act or omission that involved an extreme degree of risk. Tex. Civ. Prac. & Rem. Code
Ann. Â§ 41.001(7)(B)(i) (Vernon 1997).

 This Court has previously stated that Moriel explains that the harm to be anticipated
from the conduct must be extraordinary harm, which is further described as "death,
grievous physical injury, or financial ruin." Celanese Ltd. v. Chem. Waste Mgmt., Inc., 75
S.W.3d 593, 600 (Tex. App.-Texarkana 2002, pet. denied) (citing Transp. Ins. Co. v.
Moriel, 879 S.W.2d 10, 24 (Tex. 1994)). An extreme degree of risk is required. A remote
possibility does not meet the test, and the conduct must create a likelihood of serious
injury. Universal Servs. Co. v. Ung, 904 S.W.2d 638, 641 (Tex. 1995). Exemplary
damages are available for the purpose of punishing a defendant for outrageous, malicious,
or otherwise morally culpable conduct. Celanese Ltd., 75 S.W.3d at 600. The extreme
degree of risk factor is a significantly higher standard than the reasonable person test for
ordinary negligence. Moriel, 879 S.W.2d at 22. To determine if acts or omissions involve
extreme risks, we must analyze the events and circumstances from the defendant's
perspective at the time the harm occurred, without resorting to hindsight. Â Id. at 23. An
extreme risk of harm is a function of both the magnitude and the probability of the
anticipated injury to the plaintiff. The extreme risk prong is not satisfied by a remote
possibility or injury or even a high probability of minor harm, but rather the likelihood of
serious injury to the plaintiff. Id. at 22. This objective element is the distinguishing feature
between conduct which is deserving of punishment and that which merely demands
restitution. Â Wal-Mart Stores, Inc. v. Alexander, 868 S.W.2d 322, 326 (Tex. 1993).

 In analyzing this matter from the defendant's perspective at the time, as we are
required to do, without resorting to hindsight, it cannot be said that the defendant created
an extreme degree of risk by its actions. By statute, Dillard Department Stores, Inc. is
authorized to detain persons it reasonably believes have stolen or are attempting to steal
property in a reasonable manner and for a reasonable time to investigate ownership of the
property. Tex. Civ. Prac. & Rem. Code Ann. Â§ 124.001 (Vernon 1997). The jury found that
such detention was not reasonable and awarded Lyndon Silva damages he incurred. 
However, the jury also found that Dillard did not maliciously prosecute Silva after being
instructed in that question that malice meant "ill will, bad or evil motive, or such gross
indifference to the rights of others as to amount to a willful or wanton act." Silva was found
negligent, and the jury attributed forty percent of the cause of the occurrence to him. The
question in this case is did Dillard's actions rise to the level of outrageous, malicious, or
otherwise morally culpable conduct which should be punished. Ellis County State Bank
v. Keever, 936 S.W.2d 683 (Tex. App.-Dallas 1996, no writ).

 Viewed in the light most favorable to Silva, the evidence shows Silva was suspected
of shoplifting, detained, handcuffed, placed on the floor, and taken to a police car as
onlookers watched. This action does not pose such an extreme degree of risk as to create
a likelihood of serious injury. It is rather, at most, conduct that the law considers wrong,
but not a "most exceptional case."

 The jury awarded Silva damages for physical pain and mental anguish in the past
and in reasonable probability will be sustained in the future and attorney's fees in the total
sum of $13,124.01. These damages recompense Silva. 

 However, "[t]o be malicious, the act not only must be unlawful, but it must also be
of a wanton and malicious nature, or somewhat of a criminal or wanton nature. Whereas
every tort involves conduct that the law considers wrong, punitive damages are proper only
in the most exceptional of cases." C & D Robotics, Inc. v. Mann, 47 S.W.3d 194, 201 (Tex.
App.-Texarkana 2001, no pet.) (citing Moriel, 879 S.W.2d at 18). There is no more than
a scintilla of evidence in the record supporting a finding that Dillard created an extreme
degree of risk of serious injury of such magnitude as to be deserving of punishment. 

 Likewise, I do not believe there is any clear and convincing evidence that Dillard was
consciously indifferent to Silva's rights or welfare. Silva argues that the "most important"
evidence of Dillard's conscious indifference is its failure to ask the State to dismiss charges
against Silva. However, the jury absolved Dillard of any liability for malicious prosecution.

 Based on the above, I do not believe that there is legally sufficient evidence to
conclude clearly and convincingly that Silva suffered harm as a result of malice. I concur
in all other portions of the opinion.




 Jack Carter

 Justice


Date Submitted: February 19, 2003

Date Decided: May 13, 2003

1. Silva's receipt was for the following three SKU numbers: (1) 580-507 179604,
(2)Â 580-507 179604, and (3) 765 460 072861. Dillard's civil recovery information report
had recorded the numbers from the shirts as: (1) 580 507 0179604, (2) 580 507 0179606,
and (3) 765 460 072874.